UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:23-cr-142 |
| v. | |
| CARL DALE MARKLEY, | **PLEA AGREEMENT** |
| Defendant. | |

The United States of America (also referred to as "the Government"), Defendant, CARL DALE MARKLEY, and Defendant's attorney, enter into this Plea Agreement.

A. **CHARGES**

1. <u>Subject Offenses</u>. Defendant will plead guilty to Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 of the Indictment, that is, Sex Trafficking by Fraud and Coercion, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(1), and 1594(a).

2. <u>Charges Being Dismissed</u>. If the Court accepts this Plea Agreement, the following Counts of the Indictment will be dismissed at the time of sentencing:

   a. Count 16, that is, Sexual Exploitation and Attempted Sexual Exploitation of a Child, in violation of Title 18, United States Code, Section 2251(a), (e); and

   b. Count 17, that is, Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and 2252A(b)(2).

1

Defendant understands that, even though Counts 16 and 17 of the Indictment will be dismissed, all relevant conduct including the conduct that supported the charge(s) in Counts 16 and 17 will be considered by the Court at the time of sentencing.

**B.  MAXIMUM PENALTIES**

3. <u>Maximum and Mandatory Minimum Punishment</u>. Defendant understands that the crime to which Defendant is pleading guilty in Counts 1 through 15 carry a mandatory minimum sentence of at least 15 years in prison and a maximum sentence of life in prison; a maximum fine of $250,000; and a term of supervised release of at least 5 years and up to life. A mandatory special assessment of $100 per count must also be imposed by the Court. Defendant also understands that, if the Court determines Defendant to be a non-indigent person, pursuant to Title 18, United States Code, Section 3014(a)(3), it shall impose an assessment of $5,000 per count. Defendant understands that the Court may not impose a sentence less than the mandatory minimum sentence unless the Government files a motion for substantial assistance under 18 U.S.C. § 3553(e). No one has promised Defendant that Defendant will be eligible for a sentence of less than the mandatory minimum. Defendant understands that these sentences may be imposed consecutively.

4. <u>Supervised Release—Explained</u>. Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions. If Defendant were to violate a condition of supervised release, Defendant could be sentenced to not more than

2

5 years in prison on any such revocation, without any credit for time previously served.

5. <u>Detention</u>. Pursuant to the Mandatory Detention for Offenders Convicted of Serious Crimes Act (18 U.S.C. § 3143), Defendant agrees to remain in custody following the completion of the entry of Defendant's guilty plea to await the imposition of sentence.

C. **NATURE OF THE OFFENSE – FACTUAL BASIS**

6. <u>Elements Understood</u>. Defendant understands that to prove the offense alleged under **Counts 1 through 15 (Sex Trafficking by Fraud and Coercion)**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a) Defendant knowingly recruited, enticed, harbored, transported, provided, or obtained by any means the victim;

(b) Defendant knew or recklessly disregarded the fact that fraud, coercion, or any combination of those means would be used to cause the victim to engage in a commercial sex act; and

(c) The offense was in or affected interstate commerce.

7. <u>Factual Stipulations</u>. Attached hereto as Attachment "A", and incorporated by reference herein, are factual stipulations entered into between the parties, including the factual stipulations of Defendant's offense conduct relating to each offense. Defendant acknowledges that these statements are true.

8. <u>Truthfulness of Factual Basis</u>. Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the

presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

9. <u>Waiver of Rule 410 Rights</u>. Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this Plea Agreement, including those made in Attachment A, are admissible against Defendant. Should Defendant fail to plead guilty pursuant to this Plea Agreement or move to withdraw Defendant's plea or to set aside Defendant's conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

10. <u>Venue</u>. Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

**D. SENTENCING**

11. <u>Sentencing Guidelines</u>. Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

    (a)    The nature of the offenses to which Defendant is pleading guilty;

    (b)    The nature of the images involved, including the age of the children depicted and the nature of the sexually explicit conduct, and the number of such images;

4

  (c) Whether a computer was used in the offense;

  (d) Whether Defendant knew or should have known that a victim of the offense was a vulnerable victim;

  (e) Whether Defendant used a special skill or abused a position of trust in perpetrating the offense;

  (f) Whether Defendant engaged in a pattern of prohibited sexual conduct;

  (g) Whether Defendant attempted to obstruct justice in the investigation or prosecution of the offense;

  (h) The nature and extent of Defendant's criminal history (prior convictions); and

  (i) Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction. Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

  12. <u>Acceptance of Responsibility</u>. The parties agree that the issue of whether Defendant will receive credit for acceptance of responsibility under USSG §3E1.1 will be decided by the Court at sentencing, and the parties are free to make whatever record they deem appropriate.

  13. <u>Presentence Report</u>. Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and

5

challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

14. <u>Disclosure of Presentence Investigation Reports</u>. The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

> The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any part or page of a presentence investigation report, in either draft or final form. A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

15. <u>Evidence at Sentencing</u>. The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement. Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

16. <u>Sentence to be Decided by Judge -- No Promises</u>. This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to

accept any factual or legal stipulations agreed to by the parties. Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding. Therefore, it is uncertain at this time what Defendant's actual sentence will be.

17. <u>No Right to Withdraw Plea</u>. Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

### E. FINES, COSTS, AND RESTITUTION

18. <u>Fines and Costs</u>. Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

19. <u>Special Assessment</u>. Defendant agrees to pay the mandatory special assessment of $100 per count of conviction at or before the time of sentencing, as required by 18 U.S.C. § 3013. Defendant further understands that, if the Court determines Defendant to be a non-indigent person, pursuant to Title 18, United States Code, Section 3014(a)(3), it shall impose an assessment of $5,000 per count.

20. <u>Restitution</u>. Defendant agrees that the Court should impose an order of restitution in an amount to be determined by the Court for all relevant conduct including all conduct related to the dismissed counts. Defendant agrees that the Court shall order restitution for the full amount of losses for each victim (including, but not limited to, Victims #1 through #14 and Minor Victim #1); that such order of

restitution shall be due and payable immediately; and that if Defendant is not able to make full payment immediately, Defendant shall cooperate with the United States Probation Office in establishing an appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in making the required payments. Any such payment plan does not preclude the Government from utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the Treasury offset program.

21. <u>Financial Statement</u>. Defendant agrees to complete truthfully and in full a financial statement provided by the U.S. Attorney's Office, and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

**F.  LIMITED SCOPE OF AGREEMENT**

22. <u>Limited Scope of Agreement</u>. This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement. Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

23. <u>Agreement Limited to Southern District of Iowa</u>. This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and

cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

24. <u>Sex Offender Registry</u>. Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon Defendant's release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's life. Defendant understands that Defendant shall keep Defendant's registration current, shall notify the state sex offender registration agency or agencies of any changes to Defendant's name, place of residence, employment, or student status, or relevant information. Defendant shall comply with requirements to periodically verify in person Defendant's sex offender registration information. Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement following conviction. As a condition of supervised release, Defendant shall initially register with the state sex offender registration in the state of Iowa, and shall also register with the state sex offender registration agency in any state where Defendant resides, is employed, works, or is a student, as directed by the Probation Officer. Defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update Defendant's

registration information. Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

### G. WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

25. <u>Trial Rights Explained</u>. Defendant understands that this guilty plea waives the right to:

- (a) Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

- (b) A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

- (c) The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

- (d) Confront and cross-examine adverse witnesses;

- (e) Present evidence and to have witnesses testify on behalf of Defendant, including having the Court issue subpoenas to compel witnesses to testify on Defendant's behalf;

- (f) Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

- (g) If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

26. <u>Waiver of Appeal and Post-Conviction Review</u>. Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge(s) or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence

imposed by the Court, to the extent that an appeal is authorized by law. Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

H.  **VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL**

27.  <u>Voluntariness of Plea</u>. Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

(a)  Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

(b)  No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

(c)  No one has threatened Defendant or Defendant's family to induce this guilty plea.

(d)  Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

28.  <u>Consultation with Attorney</u>. Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

(a)  Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

  (b) Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

  (c) Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I.   GENERAL PROVISIONS

29. <u>Entire Agreement</u>. This Plea Agreement, and any attachments, is the entire agreement between the parties. Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

30. <u>Public Interest</u>. The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

31. <u>Execution/Effective Date</u>. This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

## J.   SIGNATURES

32. <u>Defendant</u>. I have read all of this Plea Agreement and have discussed it with my attorney. I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No promises have been made to me other than the promises in this Plea Agreement. I have not

been threatened in any way to get me to enter into this Plea Agreement. I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case. I am entering into this Plea Agreement and will enter my plea of guilty under this Plea Agreement because I committed the crime to which I am pleading guilty. I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

| | |
|---|---|
| 11/26/24 | *(signature)* |
| Date | Carl Dale Markley |

33. <u>Defendant's Attorney</u>. I have read this Plea Agreement and have discussed it in its entirety with my client. There is no Plea Agreement other than the agreement set forth in this writing. My client fully understands this Plea Agreement. I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of Defendant's legal rights, and without any coercion or compulsion. I have had full access to the Government's discovery materials, and I believe there is a factual basis for the plea. I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

| | |
|---|---|
| 11/26/24 | *(signature)* |
| Date | Nicholas A. Sarcone |
| | Attorney for Carl Dale Markley |
| | Babich Sarcone, PLLC |
| | 501 SW 7th Street, Suite J |
| | Des Moines, Iowa 50309 |
| | Telephone: 515-644-2243 |
| | E-Mail: Nick@babichsarcone.com |

34. <u>United States</u>.  The Government agrees to the terms of this Plea Agreement.

                                              Richard D. Westphal
                                              United States Attorney

11/26/2024                By: _/s/ Kyle J. Essley_
Date                                          Kyle J. Essley
                                              Amy L. Jennings
                                              Assistant U.S. Attorneys
                                              Neal Smith Federal Building
                                              210 Walnut Street, Suite 455
                                              Des Moines, Iowa 50309
                                              Telephone: 515-473-9300
                                              Telefax: 515-473-9292
                                              E-mail: Kyle.Essley@usdoj.gov
                                              E-mail: Amy.Jennings2@usdoj.gov

Attachment "A"

STIPULATION OF FACTS

1.  As a factual basis for Defendant's pleas of guilty, and as relevant conduct to the offenses charged in the Indictment, Defendant admits the following:

2.  From 2004 to April 2023, in the Southern District of Iowa, Defendant knowingly recruited, enticed, and obtained a few young women and dozens of young men, including, but not limited to, Victims #1 through #14. Defendant did so knowing that, or in reckless disregard of the fact that, fraud, coercion, and a combination of those means would be used to cause the young men and women, including, but not limited to, Victims #1 through #14, to engage in commercial sex acts. Specifically:

   a. *Count 1.* From at least 2004 to at least 2014, Defendant knowingly recruited, enticed, and obtained Victim #1 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #1 to engage in commercial sex acts.

   b. *Count 2.* From at least 2005 to at least 2011, Defendant knowingly recruited, enticed, and obtained Victim #2 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #2 to engage in commercial sex acts.

   c. *Count 3.* From at least September 2008 to at least 2015, Defendant knowingly recruited, enticed, and obtained Victim #3 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #3 to engage in commercial sex acts.

   d. *Count 4.* From at least July 2016 to at least August 2020, Defendant knowingly recruited, enticed, and obtained Victim #4 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #4 to engage in commercial sex acts.

   e. *Count 5.* From at least 2017 to at least April 2023, Defendant knowingly recruited, enticed, and obtained Victim #5 knowing and in reckless disregard of the fact that fraud, coercion, and a

        combination of those means would be used to cause Victim #5 to engage in commercial sex acts.

f.    *Count 6.* From at least June 2019 to at least February 2023, Defendant knowingly recruited, enticed, and obtained Victim #6 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #6 to engage in commercial sex acts.

g.    *Count 7.* From at least December 2019 to at least April 2023, Defendant knowingly recruited, enticed, and obtained Victim #7 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #7 to engage in commercial sex acts.

h.    *Count 8.* From at least 2021 to at least April 2023, Defendant knowingly recruited, enticed, and obtained Victim #8 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #8 to engage in commercial sex acts.

i.    *Count 9.* On or about August 25, 2021, Defendant knowingly recruited, enticed, and obtained Victim #9 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #9 to engage in commercial sex acts.

j.    *Count 10.* From at least January 2022 to at least March 2022, Defendant knowingly recruited, enticed, and obtained Victim #10 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #10 to engage in commercial sex acts.

k.    *Count 11.* From at least March 2022 to at least April 2023, Defendant knowingly recruited, enticed, and obtained Victim #11 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #11 to engage in commercial sex acts.

l.    *Count 12.* From at least May 2022 to at least July 2022, Defendant knowingly recruited, enticed, and obtained Victim #12 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #12 to engage in commercial sex acts.

  m. ***Count 13.*** From at least July 2022 to at least March 2023, Defendant knowingly recruited, enticed, and obtained Victim #3 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #3 to engage in commercial sex acts.

  n. ***Count 14.*** From at least August 2022 to at least April 2023, Defendant knowingly recruited, enticed, and obtained Victim #13 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #13 to engage in commercial sex acts.

  o. ***Count 15.*** From at least November 2022 to at least March 2023, Defendant knowingly recruited, enticed, and obtained Victim #14 knowing and in reckless disregard of the fact that fraud, coercion, and a combination of those means would be used to cause Victim #14 to engage in commercial sex acts.

3. Among other things:

  a. From 2004 to April 2023, Defendant gained access to young men in several ways. He owned several businesses in the Ames area which employed primarily teenagers and young men. In 2014, Defendant became a licensed nurse practitioner in the State of Iowa. Through his work as a nurse practitioner, Defendant regularly performed athletic physicals at various locations in the Southern District of Iowa. He also served as an adjunct professor at Grand View University.

  b. Defendant lowered the inhibitions of the young men he targeted— Defendant sometimes started this process with minor male children. Defendant offered to perform physicals on young men or minor male children, or to provide medical care or serve as primary care physician; he asked young men and minor male children numerous sex-related questions and make sex-related comments.

  c. For many of the young men Defendant victimized, Defendant served as a mentor, and/or he shared a close relationship with them developed over the course of several years.

  d. Defendant offered to pay young men for engaging in sex acts. Defendant was willing to pay more money if a young man (1) would agree to complete more sex acts, or (2) was willing to

17

        complete more graphic sex acts. Defendant even offered "bonuses."

    e.    Defendant told young men that he needed to perform sex acts on the young men, and/or he needed to observe the young men perform sex acts, for a variety of reasons, including, but not limited to, (1) to obtain medical certifications or licensures, (2) to obtain massage certifications or licensures, (3) for classes he was enrolled in, (4) for third-party research that he was involved in, or (5) for product development.

    f.    Defendant was aware the foregoing justifications were false. No certification or licensure, no class Defendant was enrolled in, and no third-party researcher or research institution required that Defendant perform sex acts on individuals or that he observe individuals engaged in sex acts. Defendant never worked with or was involved with a third-party researcher or research institution in regard to sexual topics; and prior to the criminal investigation against him beginning in spring 2023, he never took steps to develop a product.

4. Defendant's false claims were designed to cause young men and women to engage in the sex acts set forth by Defendant in exchange for payment. Defendant completed numerous acts to bolster the credibility of his false claims, including, but not limited to:

    a.    He referred to the performance of commercial sex acts as "research" and "studies" with names like "anthropmetrical," "overnight," "condom," and "holistic."

    b.    He claimed falsely to be involved with, working with, or employed by legitimate research companies or institutions. He falsely claimed to have received grants or funding from third parties for research or product development.

    c.    He lied that he worked with numerous "research" subjects, and that there were other "researchers" who could participate in research sessions.

    d.    He lied that there were only a certain number of spots for participants in the research studies, and that only the first volunteers would be able to participate. He also regularly lied to young men via text messaging about numerous fake opportunities

      for them to engage in commercial sex acts for purposes of research or product development.

  e. He fabricated consent forms and contracts requiring victims to participate in certain numbers and types of paid sex acts purportedly for medical or research purposes.

  f. Defendant lied that the third party overseeing his work/research selected the type, nature, and number of sex acts that the young men had to complete to receive payment.

  g. During purported "research" sessions at which commercial sex acts occurred, Defendant often acted as if he was recording data or information.

  h. Defendant often appealed to the benevolence of the young men, telling them that his work/research was helping others.

5. Based on Defendant's false statements, the actions he took to bolster his false statements, and the trust they had in Defendant as a nurse practitioner and respected business owner, a few young women and dozens of young men, including, but not limited to, Victims #1 through #14, agreed to complete sex acts in exchange for payment by Defendant.

6. Several of the young men Defendant victimized rented apartments from Defendant and/or were employed by one of Defendant's businesses. Some of these young men felt like they had no choice but to participate in commercial sex acts with Defendant because Defendant had control over their living situation and/or pay.

7. Defendant concealed his wrongdoing, telling his victims that his activities were secret, that the third parties he was working with required confidentiality, and that there would be repercussions if their activities were revealed.

8. Through his efforts, Defendant successfully persuaded and enticed a few young women and dozens of young men to perform commercial sex acts, including, but not limited to, Victims #1 through #14. Among other things, Defendant persuaded and enticed young men to let Defendant masturbate them (often to the point of ejaculation), penetrate their anus, and/or perform oral sex on them.

9. Defendant paid the young men and women in cash or via online payment platforms for their participation in commercial sex acts. Defendant paid some young men thousands of dollars in exchange for the young men participating in dozens of meetings with Defendant at which commercial sex acts occurred.

10. Defendant sometimes used hidden cameras to capture videos and images of depicting young men or minor male children naked (including Minor Victim #1). Some of the videos and images depict Defendant performing sex acts on young men.

11. Defendant's activities were in or affecting interstate commerce in that, among other things, Defendant used the Internet and cellphones to recruit, entice, and obtain the foregoing young men; he ordered condoms that were used during commercial sex acts and given to some of the young men; and he used hotels/motels that were part of national chains and which housed out-of-state customers.

12. Defendant hereby certifies that the facts set forth above are true and accurate to the best of Defendant's knowledge.

11/26/24
Date

Carl Dale Markley
Defendant

11/26/24
Date

Nicholas A. Sarcone
Attorney for Carl Dale Markley

Richard D. Westphal
United States Attorney

11/26/2024
Date

By: Kyle J. Essley
Amy L. Jennings
Assistant United States Attorneys